**IMG-107**                                                      **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2311
_____

SHAN EN ZHANG;
JUAN CHEN, a/k/a KO-MIN TSAO,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency Nos. A089-252-304; A095-710-240)
Immigration Judge: Alberto J. Riefkohl

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2011
Before:  BARRY, HARDIMAN AND STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  April 15, 2011)
_____

OPINION
_____

PER CURIAM

Shan En Zhang ("Zhang") and Juan Chen ("Chen") petition for review of the

Board of Immigration Appeals' final order of removal.  For the reasons that follow, we

will deny the petition for review.

Zhang and Chen are husband and wife and natives and citizens of China. Chen entered the United States without inspection on or about May 29, 2005. On June 1, 2005, the Department of Homeland Security issued a Notice to Appear, charging that she was removable under Immigration & Nationality Act ("INA") § 212(a)(7)(A)(i)(1), 8 U.S.C. § 1182(a)(7)(A)(i)(1), as an alien who was inadmissible at the time of entry. On August 27, 2006, Chen applied for asylum, statutory withholding of removal, and protection under the Convention Against Torture, claiming that she fled China to avoid a forced marriage. Zhang entered the United States without inspection, apparently in August, 2007. Chen and Zhang met in the United States and were married in December, 2007. Zhang then filed his own application for asylum, statutory withholding of removal, and protection under the CAT, claiming a fear of persecution by the Chinese government on account of his practice of the outlawed Falun Gong. The application was referred to Immigration Court, and, on March 3, 2008, the government issued a Notice to Appear, charging that Zhang was removable under INA § 212(a)(6)(A)(i), 8 U.S.C. §1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Zhang and Chen agreed to consolidate their separate cases into a single proceeding, with Zhang as the principal applicant.

At a hearing before the Immigration Judge on June 16, 2008, the couple conceded the charges and renewed their request for asylum. Zhang testified that "I have not been healthy since I was young…. I often had fevers and had cold." A.R. 297. Zhang sought medical treatment and "took medications almost every day." Id. The medications "didn't quite work out." Id. In February, 2003, Zhang's friend, Hua Sheng Yang,

2

recommended that he try practicing Falun Gong. See id. at 298; Petitioners' Brief, at 9. Zhang started practicing Falun Gong at his friend's house and also at home. Id. As a result, he "felt better mentally" and his "physical condition also got better." Id. at 299-300. But, on December 31, 2006, Zhang was practicing Falun Gong at his friend's house when four police officers arrived and arrested them. See id. at 300-01. Zhang testified that he and his friend were taken to the police station and he was "detained in a small and dark room" and interrogated. Id. at 301. He was asked about other Falun Gong practitioners and their whereabouts, and, when he said "that [he] didn't know," the officers "cursed me dirty language and hit me with fists and kicked." Id. at 302.

Zhang was kept at the police station for seven days, was interrogated and beaten every day, and was not provided with enough to eat or drink. See id. at 303-04. After Zhang's father "bribe[d] people" to obtain his release, Zhang signed a statement stating that he would no longer practice Falun Gong. Id. at 307. He was told to report to the police on a weekly basis. See id. Following his release, Zhang "didn't dare" to practice Falun Gong. Id. He reported to the police once a week, and, each time, the police threatened him and told him not to practice Falun Gong. See id. at 308. Zhang "started to have colds -- to suffer from colds more than before," and his inability to practice Falun Gong was "very painful for me. This was like having lost freedom." Id.

Zhang left China on July 17, 2007. Once in the United States, he practiced Falun Gong every day by himself in his room. See id. at 311-12. Zhang testified that he fears that, if he is returned to China, he will be jailed. See id. at 312. Since his departure, the

3

police have come to his father's house and threatened his father.  See id. at 312-13.  The police want Zhang to return to China and "surrender to them."  Id. at 314.

On cross-examination, the government asked many questions about Zhang's knowledge of Falun Gong, and whether anyone could verify that Zhang practices Falun Gong in the United States.  In addition, the government established on cross-examination that Zhang's aunt lives in New York and is the individual who picked him up at the smuggler's house after he arrived in New York.  See id. at 330.  The government asked if Zhang told his aunt that he left China because of his Falun Gong activities, and he replied that he had not, explaining that "I felt that it wasn't going to help anything by telling her."  Id.  The government pressed, asking: "[S]he never asked you what you were doing here in the United States?"  Id.  Zhang replied no.  See id. at 330-31.  The government then established that Zhang's mother told his aunt that he was coming to the United States.  See id. at 332.  Again, the government pressed, asking: "[Y]our mother didn't tell her why you were coming to the United States?"  Id.  Zhang replied: "I heard that my mother told … my aunt that I was released from detention because of … something, and … I didn't have much of anything else to do … in the country, and she was planning to send me to the United States."  Id.

The IJ denied Zhang's applications for relief and protection following the hearing, concluding that he had failed to meet his burden of proof and persuasion.  Although the IJ did not make an adverse credibility finding, he expressed doubt about the truthfulness of Zhang's testimony that he had been detained for seven days.  A.R. 10.  In general, the IJ noted a lack of details and supporting evidence, and Zhang's failure to provide an

4

adequate explanation for his inability to provide corroborating evidence. The IJ found that Zhang's aunt could have corroborated his claim that he had been detained in China, because Zhang admitted that his mother gave her that information. With respect to Zhang's claim for protection under the CAT, the IJ found that he had presented insufficient evidence to support it. The IJ ordered that Zhang and Chen be removed to China. On October 30, 2009, the Board of Immigration Appeals affirmed the IJ in all respects. Although Zhang argued otherwise, the Board specifically agreed with the IJ that Zhang's aunt could have corroborated his testimony regarding his claimed detention in China, and that Zhang should have contacted her through his mother. The Board also believed that Zhang should have been able to produce medical records to corroborate the treatment he received when he was sickly prior to starting his practice of Falun Gong and the treatment he received after he was released from detention.

On December 30, 2009, Zhang and Chen filed a timely motion to reopen with the Board, 8 C.F.R. § 1003.2(c)(1), (2), seeking further consideration of their asylum application, and submitting additional new evidence, including: a notice to Zhang's parents dated 12/28/09 from the Guan Tou Town, HuJiang Village Committee, in which it is stated that the committee is aware that Zhang has continued to practice Falun Gong in the United States and wants him to return to China for severe and harsh punishment; an affidavit from his mother adding her report of the local cadre's visit to her home on 12/28/09; the May, 2007 Profile of Asylum Claims and Country Conditions for China; an article relating to assaults on Falun Gong practitioners by Chinese immigrants in Flushing, New York; and photographs of the couple practicing Falun Gong. The couple

5

claimed that, following their hearing before the IJ, they had become active in Falun Gong activities in the United States, and had participated in protests against China's ban on Falun Gong. A.R. 43-44. They also claimed that, due to Zhang's own positive health benefits, he had "encouraged his wife to practice Falun Gong too." Id. at 43. Zhang also asked the Board to reissue its October 30, 2009 decision. The government opposed reopening on the ground that the documents Zhang and Chen submitted had not been authenticated.

In a decision dated April 27, 2010, the Board denied the motion to reopen. The Board considered the couple's new and previously unavailable evidence, but concluded that, even when buttressed by Zhang's mother's affidavit, the vague references in the December 28, 2009 notice from the HuJiang Village Committee to potential "severe" or "harsh" punishment were not sufficient to establish a likelihood that any penalty imposed on Zhang or Chen for practicing Falun Gong would rise to the level of persecution. The Board noted that, at his merits hearing, Zhang claimed a seven-day detention and beatings on account of his practice of Falun Gong but, even so, that claim alone was insufficient to satisfy his burden of proof with respect to showing past persecution. The Board further found that the 2007 Asylum Report was available at the time of the June 16, 2008 merits hearing, but, in any event, the Board determined that the Report did not support the assertion that Zhang would receive some harsher punishment for his activities in the United States than what was previously imposed on him for his activities in China. The Board determined that the article showing attacks in Flushing, New York on Falun Gong practitioners was not relevant to whether the couple would suffer future persecution

6

in China. Finding that the October 30, 2009 decision had been returned to the Board "by the postal service as undelivered," the Board exercised its discretion to reissue its original decision as of April 27, 2010.

Zhang and Chen filed a petition for review within 30 days of the Board's decision denying their motion to reopen and the Board's reissued decision affirming the IJ. In their brief, they contend that the Board's original decision is not supported by substantial evidence because they provided sufficient corroborative evidence, see Petitioners' Brief, at 19-20. Specifically, they contend that the agency's finding that Zhang's aunt should have been able to corroborate his testimony concerning his detention in China is flawed. See id. at 20. They also contend that the Board abused its discretion in denying their motion to reopen because their new and material evidence was not vague, see id., at 23-24. In addition, the Board improperly required them to show "full eligibility for asylum, as opposed to a prima facie showing of eligibility for asylum….," see id. at 26.

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Where the Board adopts and affirms the IJ's decision as it did here, and provides some analysis of its own, we review both decisions. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review the agency's determination of whether an alien has established eligibility for asylum and withholding of removal under the substantial evidence standard, treating the factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B); Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S.

7

478, 481 n.1 (1992) (reversal of the agency's decision requires a finding that the evidence not only supports reversal but compels it).

The determination that Zhang did not show past persecution is supported by substantial evidence. The IJ and the Board originally determined that what allegedly happened to Zhang – a seven-day detention and beatings every day – did not rise to the level of persecution, and the record does not compel a contrary conclusion, see Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119-20 (3d Cir. 2007) (five-day detention resulting in minor injury did not amount to persecution); Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (single beating that does not result in serious physical injury does not compel reversal of the Board's decision that alien did not suffer past persecution). Zhang offered no evidence that he was seriously injured. Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda, 477 F.3d at 119 (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)). It refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id.

In determining whether an alien has met his burden of proof, the trier of fact may "determine[] that the applicant should provide evidence that corroborates otherwise credible testimony…." INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii). We have held that corroboration may be required, even from credible applicants, see Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001), where it is (1) reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the

8

applicant fails to adequately explain that failure. Chukwu v. Att'y Gen. of U.S., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Toure v. Att'y Gen. of U.S., 43 F.3d 310, 323 (3d Cir. 2006). See also Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 252-53 (3d Cir. 2009) (same). The IJ and the Board complied with this test in Zhang's case. This is a case in which the IJ had considerable doubt about Zhang's credibility. A.R. 10. The agency concluded that it was reasonable to expect corroboration and we agree. Zhang's aunt was in the United States, had contact with him in the United States, and, by his own admission, was aware that he had been detained in China. Zhang's assertion that she had no relevant testimony to offer concerning his claimed detention is contradicted by the record. We further agree with the agency that Zhang had no reasonable explanation for his failure to request a letter from his aunt corroborating his claim. In addition, it was reasonable for the agency to expect corroboration of Zhang's medical treatment. Zhang testified that he received his medical care at small, private clinics and thus there were no medical records to document any of his treatment, A.R. 339-40. The agency determined that this explanation was insufficient and the record does not compel a contrary conclusion.

In the absence of evidence of past persecution, the alien must demonstrate a subjective fear of persecution through credible testimony that his fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), and the alien must show that a reasonable person in his circumstances would fear persecution if returned to the country in question, see id. Here, the agency's determination that Zhang could not establish a well-founded fear of persecution without corroborating evidence is supported by substantial evidence.

9

Withholding of removal requires Zhang to demonstrate a clear probability that he will face persecution on account of a protected ground if returned to China. See Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). Because Zhang could not meet the asylum standard, he necessarily cannot satisfy the withholding of removal standard. See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). In addition, the record does not compel a conclusion that Zhang met his burden of establishing that it is more likely than not that he will be tortured upon his return to China. See 8 C.F.R. § 1208.16(c)(2).

"A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material.... A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). The Board will deny a motion to reopen if the new evidence would not likely change the result in the case. Matter of Coelho, 20 I. & N. Dec. 464, 472-73 (BIA 1992). See also Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105 (1988) (Board may deny motion to reopen where alien has not demonstrated prima facie eligibility for substantive relief sought). The prima facie standard for a motion to reopen requires the applicant to produce objective evidence showing a reasonable likelihood that he can establish that he is entitled to relief. Id. at 175.

We review the Board's denial of a motion to reopen for abuse of discretion. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). Under this deferential standard, we will reverse the Board's decision only if it is arbitrary, irrational, or contrary to law. Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). The Board did not abuse its discretion in denying the couple's motion to reopen, nor did it require from them any more than a prima facie showing of eligibility for relief. Zhang and Chen did not establish a prima facie case for asylum. Vague references to potential "severe" or "harsh" future punishment by village officials are indeed insufficient to show that any penalty imposed on Zhang or his wife for practicing Falun Gong would rise to the level of persecution. In addition, the problems in Flushing among members of the Chinese immigrant community – those who practice Falun Gong and those who do not – are not probative of what Zhang and Chen can expect to find when they return to China. The Board did not err in determining that the May, 2007 Asylum Report is not new evidence, because it was available at the time of the June 16, 2008 merits hearing in this case. Moreover, although 2007 Asylum Report notes that some Falun Gong practitioners have been "confined in reeducation – through – labor camps and high-security psychiatric hospitals for the criminally insane," A.R. 101, the record here does not suggest, let alone compel, a finding that Zhang and Chen might suffer such a fate.

For the foregoing reasons, we will deny the petition for review.